| | |
|---|---|
| ROBERT BRADLEY BYRNE<br>4027 Forest Valley Way<br>Baltimore, MD 21234 | * IN THE<br>*<br>* CIRCUIT COURT |
| Plaintiff | * FOR |
| Vs. | * BALTIMORE COUNTY |
| | * |
| TOWSON FORD SALES, INC.<br>926 N. York Road<br>Towson, MD 21204 | * CASE NO. 03-C-04-008809 |
| | * CCB 05 CV 2382 |
| SERVE ON:<br>Resident Agent:<br>Michael McBee, Esquire<br>7723 A Trappe Road<br>Baltimore, MD 21222 | * |
| AND | * |
| FORD MOTOR CREDIT COMPANY →<br>The American Road<br>Dearborn, MI 48121 | * Stephen Kahn<br>202-457-3973 |
| SERVE ON:<br>Resident Agent:<br>The Corporation Trust<br>300 E. Lombard Street<br>Baltimore, MD 21202 | * |
| AND | * |
| RON KEITH, Individually<br>Ford Motor Credit Company<br>926 N. York Road<br>Towson, Maryland 21204 | * |
| AND | * |
| PAULA KRECZMER, Individually<br>926 N. York Road<br>Towson, Maryland 21204 | * |

| | |
|---|---|
| AND | * |
| ED WHEATON, Individually<br>926 N. York Road<br>Towson, Maryland 21204 | *<br><br>* |
| AND | * |
| GENE WIRTH, Individually<br>926 N. York Road<br>Towson, Maryland 21204 | *<br><br>* |
| Defendants | |

\* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Robert Bradley Byrne, by Jane Santoni of Williams, Bauer & Santoni, LLP, his attorneys, files suit against Towson Ford Sales Inc., Ford Motor Credit Company, Paula Kreczmer, Ed Wheaton, Ron Keith and Gene Wirth.

### JURISDICTION AND VENUE

1. Plaintiff is a resident of Baltimore County, Maryland.

2. Defendants are residents and/or regularly conducting business in Baltimore County, Maryland. Defendants Kreczmer, Wheaton and Wirth were agents, servants, and/or employees of Defendant Towson Ford Sales, Inc. ("Towson Ford") at the time of all acts in this Complaint. Defendant Towson Ford is an automobile dealer. For purposes of this Complaint, "Dealer" refers to Defendant Towson Ford, or any of its agents, servants, and/or employees, including Defendants Kreczmer, Wheaton, and Wirth. Defendant Keith was an agent, servant, and/or employee of Ford Motor Credit Company ("FMC") at the time of all acts referred to in this Complaint.

3. Jurisdiction and venue are proper in Baltimore County, Maryland.

## FACTS COMMON TO ALL COUNTS

4.  Plaintiff visited the Dealer's lot in Towson on or about 10-24-03 to look at Dealer's available inventory of 2003 F-150 model Ford pick-up trucks for sale. Defendant Kreczmer was the salesperson handling the transaction. Defendant Wheaton was the supervisor of sales and Defendant Wirth was the general manager of Towson Ford.

5.  Plaintiff was shown various F-150's, including the subject vehicle, VIN #1FTRX18L03NA9114, then located on an adjacent lot maintained by Dealer. Subject vehicle was locked at the time of Plaintiff's visit and also had a flat tire rendering it temporarily inoperable. Additionally, the Towson Ford's salesperson, Defendant Kreczmer, did not readily have or was otherwise unable to readily locate or obtain the key to the subject vehicle.

6.  Defendant Kreczmer advised Plaintiff that the subject vehicle was a demo and had approximately 5,000 miles on it.

7.  At no time did Plaintiff enter the subject vehicle or otherwise operate or attempt to operate it for any purpose. Plaintiff was unable to independently and directly verify the mileage of the vehicle. There was no window sticker on or attached to the subject vehicle, inside or out, indicating the actual mileage and the remaining warranty on the subject vehicle at the time of Plaintiff's visit to the Towson Ford.

8.  Plaintiff, being familiar with the year, make and model of the vehicle, negotiated the purchase and financing of said vehicle, all with/through Towson Ford. It was only then that Plaintiff discovered, without Defendant taking the initiative to tell him in correction of Defendant's earlier misrepresentation at as to actual mileage, on the purchase

document prepared by Dealer which he executed on 10-24-03, that the subject vehicle in fact then had in excess of 7,000 miles on it.

9. Due to the discrepancy in the actual verses the advertised/indicated mileage of the vehicle, Plaintiff demanded an extension of the manufacturer's warranty as a condition of sale to provide the full basic three (3) year, 36,000 mile manufacturer's warranty on top of the existing mileage of the vehicle, e.g., to take that warranty to a total of 42,000 cumulative odometer miles.

10. That warranty extension was handwritten on the sales agreement by the Dealer. There was no documentation provided by or through Dealer, then or later, regarding the terms of such warranty extension, including, without limitation, coverage terms, deductibles, assignability, claims processing, third-party underwriting, geographic restrictions on servicing and/or claims handling, etc. Plaintiff was advised by Dealer, verbally and not otherwise, that the Dealer would stand behind that warranty extension. The warranty statement did not indicate that it was "after market." The warranty was not backed by the manufacturer.

11. Dealer also advised Plaintiff that certain rebates or other financing incentives might not be available to Plaintiff for the subject purchase, but went ahead and provided credit for them to Plaintiff, with the provision that Plaintiff would have to provide certain unspecified further documentation to Dealer or its financing agent, Defendant Ford Motor Credit Company, to "confirm" entitlement to same. Plaintiff's financing of the subject purchase was predicated on the inclusion of such incentives, and Plaintiff became apprehensive that such incentives were being "over-sold" by Dealer, and might be retracted or back-billed to Plaintiff by Defendant FMC after the sale. Plaintiff never provided, nor was he

required by Defendant Towson Ford or Ford Motor Credit (FMC) to provide any further documentation to confirm his entitlement to the aforesaid incentives.

12. Plaintiff gave Dealer a check in the amount of $2,100.00 as a deposit o the purchase agreement at the time of execution of the purchase agreement for the subject vehicle drawn on a local bank.

13. Plaintiff then left the Dealership without ever having driven the subject vehicle. Specifically, Plaintiff did not remove, operate, drive, or otherwise authorize any party including Dealer to remove, operate, or drive, for or on behalf of Plaintiff, the subject vehicle from or off of the lot or possession of Towson Ford. At the time of Plaintiff's providing a deposit to Defendant and his leaving of Defendant's dealership, the subject vehicle was not ready to be moved, and the buyer financing for same had not yet been finally processed or approved, nor had he completed documentary disclosures to FMC.

14. At the time of his leaving the dealership on 10-24-03, Plaintiff was given only copies of his purchase agreement and a receipt for his deposit.

15. Due to the odometer reading discrepancy and the casual and vague manner in which the issues of extended warranty and certain financing incentives were handled by the Defendant, Plaintiff became wary of the purchase and decided, by the next day, to cancel the subject Purchase Agreement with Dealer. At this point the subject vehicle was in the exclusive possession and control of Dealer and a part of Dealer's active, on-site inventory. Dealer did not have to order any parts for or otherwise perform any made-ready or after-market work on the subject vehicle, excepting to repair or replace the flat tire, which it had to do anyhow in order to render the vehicle operable.

09/24/2004  16:28  4183219837          KATES CO                           PAGE 10

16. The day following Plaintiff's execution of the Purchase Agreement, Saturday, October 25, 2003, Plaintiff physically went to his bank and stopped payment on the deposit check given the previous day to Defendant.

17. On the morning of the next business day, Monday, October 27, 2003, at approximately 9:00 a.m. Plaintiff telephoned Defendant and attempted to reach his salesperson, Defendant Kreczmer and Defendant Wheaton, sales manager, in order to advise of his timely decision to cancel the subject purchase. Complainant was advised that Kreczmer and Wheaton were both unavailable to take his call. Plaintiff then left a voice mail message on Defendant Wheaton's phone requesting a return call. When Plaintiff did not receive the requested return call by mid-day, he again called the Dealer's sales manager, Defendant Ed Wheaton, with whom he had also dealt, and attempted to advise that individual of his election to cancel the contract. That individual was similarly unavailable or elected not the take Plaintiff's call, so Plaintiff left a voice mail message for Defendant Wheaton was well, advising and confirming of the cancellation and stop-payment on his deposit.

18. Plaintiff did not receive a return call on that Monday from either Defendant Kreczmer or Defendant Wheaton, each earlier contacted by Plaintiff. Plaintiff did finally reach Defendant Wheaton that evening at approximately 7:00 p.m., and advised him of his election to cancel. Defendant Wheaton was uncooperative and advised that the Dealership position was that Plaintiff had in fact purchased the subject vehicle and, if the financing contract with FMC had been funded, the purchase was consequently bound and binding upon Plaintiff. Defendant Wheaton further stated to Plaintiff that he would have to check to see if the financing from Ford Motor Credit had been funded or not, and that he would call Plaintiff

back upon making that determination. Plaintiff never received such a follow-up phone call from Defendant Wheaton. Furthermore, Defendant Wheaton made no demand that Plaintiff pick up the vehicle, nor did he reference the Dealer's intention to affect delivery by drop-off the next day.

19.    For the entire day of Monday, 10-27-03, as well as the entire preceding weekend, the subject vehicle was and remained entirely in the possession and control of Dealer, with no pick-up made or delivery of same undertaken or authorized whatsoever by Plaintiff.

20.    On the same day, Monday, October 27, 2003, after Plaintiff had elected to cancel his purchase agreement with Defendant and attempted to so inform Defendants, Plaintiff went to Plaza Ford, Inc. in Belair, MD, to look for another pick-up truck. While there, in the office and company of Mr. Frank Jancuk, Sales Consultant at Plaza Ford, between the approximate hours of 11:00 a.m. and 1:00 p.m., Plaintiff did receive a call on his cell phone from a Ms. Gianina Chiddo, and employee of Towson Ford in the after-market accessories department. That call was in response to Plaintiff's earlier inquiries to Ms. Chiddo regarding certain after-market accessories he was interested in for the subject vehicle – and which, as of that time, had not been installed, in whole or in part, on said vehicle. The Plaintiff then advised Ms. Chiddo by telephone, in the presence of Mr. Jancuk of Plaza Ford, of his election to terminate his purchase agreement with Towson Ford, and further advised her of his repeated attempts to contact Defendant Kroezmer and Defendant Wheaton, and additionally and specifically requested that she personally inform those individuals at her

dealership of his election to cancel and the deposit stop-payment, as soon as possible. Ms. Chiddo told Plaintiff she would do so.

21. While at Plaza Ford, Plaintiff met with the Finance and Insurance person of that dealership to arrange financing for a purchase of a vehicle from Plaza through Ford Motor Credit, and told that individual of his election to cancel his earlier purchase agreement with Towson Ford and the FMC financing associated with same. That individual, as well as a sales manager at Plaza Ford, indicated to Plaintiff that they would promptly so inform Defendant Ron Keith, the area Zone manager of Ford Motor Credit, of Plaintiff's Towson Ford cancellation. At the time, Defendant Keith was physically present at Plaza Ford. Defendant Keith was informed that day of the cancellation by at least two different employees of Plaza Ford.

22. Plaintiff purchased a vehicle from Plaza Ford and subsequently removed it from the Plaza ford lot was soon as it was ready and tags were obtained.

23. The next day, Tuesday, October 28, 2003, a person or persons known to and under the direction and control of Towson Ford, including Defendant Gene Wirth, did deliver the subject white F-150 pick-up truck to the address of 309 Five Farms Lane, Timonium, MD 21093 during the early-mid-afternoon of that day. Said delivery, in the judgment and belief of Plaintiff, was intentionally rushed, undertaken, and accomplished by Defendant Towson Ford and/or its agents in an attempt to "force" and "complete" the purchase agreement with Plaintiff, despite Plaintiff's prior, timely, and multiple conversations with sundry personnel associated with and in the employ of Towson Ford to communicate his election to cancel and terminate his purchase agreement with same.

24. The aforesaid delivery and drop-off by Defendant Towson Ford were utterly without authorization by Plaintiff and were in direct and unequivocal contravention to Plaintiff's prior cancellation of his purchase agreement with Defendants. Further, aid delivery was made in a highly unprofessional, "drop-and-run" manner by Defendant Towson Ford, with no attempt to ascertain if anyone was at home at 309 Five Farms Lane. Additionally, the subject vehicle was left by Towson Ford on private property, in a clearly designated and restricted assigned parking space, all without permission and/or authorization. The manner of delivery and drop-off were observed in their entirety by a neighbor of the 309 Five Farms Lane property. Five Farms Lane is a public-access street, but is owned and maintained, and is subject to, the rules and regulations of the private community in which it is located.

25. The subject vehicle was left by Defendant Towson Ford at 309 Five Farms Lane in an unlocked state, with keys and a packet of documents left there in. That manner of unauthorized delivery thus placed the unlocked vehicle with keys left-in open and available to anyone, and readily vulnerable to theft or damage, all through no fault or action of Plaintiff.

26. The 309 Five Farms Lane address at which Defendant Towson Ford dumped the subject vehicle was not Plaintiff's home or legal address, and was only used by Plaintiff for mailing purposes. It is the address and home of Plaintiff's mother, one Mary Grace Byrne, who is neither a co-owner of nor a financing guarantor or accommodation party on the financing for the subject vehicle, nor is she connected with same in any manner. At no time was Mrs. Byrne's permission to leave or park said vehicle ever sought or obtained by any Defendant.

27. The subject white F-150 delivered without authorization and contrary to Plaintiff's prior purchase cancellation to 309 Five Farms lane.

28. On Monday evening, October 27, 2003, Plaintiff spoke with Defendant Wheaton, as described above, and was given a purposely false and mis-leading response to Plaintiff's good-faith cancellation of the purchase agreement with Defendant, in which Defendant told Plaintiff he could not cancel since his financing contract had (allegedly) already been or was being funded by FMC. This is inconsistent, in spirit and letter, with COMAR 11.12.01.15 (Vehicle Sales Contracts).

29. On the same day, 10-27-03 Plaintiff timely advised an employee of Defendant Towson Ford, by telephone, Ms. Gianina Chiddo, of his election to cancel, and she agreed to so promptly inform her employer.

30. On or about February 20, 2004, the vehicle was removed from its location at 309 Five Farms Lane, and Defendant sent notice of "repossession" to Plaintiff. Defendant Towson Ford Sales, Inc. has now brought an action against Plaintiff for recovery of the down payment and attorney fees.

31. Plaintiff exercised his lawful rights under COMAR to cancel his purchase agreement with Defendant Towson Ford and Ford Motor Credit, and did so in a forthright, timely, effective, and commercially reasonable manner. Notwithstanding Plaintiff's multiple notifications of cancellation, Defendant Towson Ford did hastily push through purchase money financing with Ford Motor Credit while acting as agent for FMC, despite the fact that Plaintiff never completed or submitted the indicated documentary confirmations regarding rebate and financing incentive qualifications required by Defendant Towson Ford.

32. Defendant Towson Ford's insistence, as of the evening of 10-27-03, that the "trigger" for binding the purchase agreement between the parties was the funding of the FMC financing, demonstrates that this Defendant did, in fact, tacitly if not specifically confirm its receipt of the notice of cancellation from Plaintiff before Defendant Towson Ford, Inc. delivered the vehicle in question. The rushed closure of the subject vehicle financing from FMC prior to and in the absence of Plaintiff's completion of required incentive/rebate qualifications documentation also conclusively shows Defendant's intent and action to "force" that financing in order to accelerate its ability to deliver the vehicle.

33. Defendant Towson Ford, Inc. did unlawfully deliver and drop-off the subject vehicle to an unauthorized third-party location *after* receipt of multiple effective notices of cancellation from/by/on behalf of Plaintiff, and in so doing has accomplished a continuing and demonstrably unauthorized trespass upon private and restricted property not belonging to Plaintiff or any Defendant.

34. Defendant failed to provide Plaintiff with any written details or policy for the extended vehicle warranty beyond Respondent's cryptic notation on a purchase memo.

35. Defendants did enter a false and inaccurate Date of Delivery as "10-24-03" upon the MD Temporary Registration Certificate. Defendants prepared and had Plaintiff sign when in face not such delivery had been attempted, made, or requested as of that date.

36. As a direct result of the above Plaintiff Robert Bradley Byrne has suffered and continues to suffer needless, predictable, involuntary, and wholly avoidable stress, inconvenience, embarrassment, harassment, and expense, as well as damage to the credit

record of Plaintiff, all in direct, foreseeable, and derivative consequence of the actions of Defendants.

## COUNT I – UNFAIR AND DECEPTIVE TRADE PRACTICES

37. Plaintiff incorporates all prior paragraphs.

38. The transactions involved in this suit are subject to the Maryland Consumer Protection Act, Maryland Annotated Code Section 13-301 et seq.

39. Defendants' actions regarding the warranty, rebate, incentive and other terms of the contract, as set for above, were misleading, deceptive and in violation of this code.

40. Defendants' actions in telling Plaintiff that he had a contract and was bound when delivery had not yet occurred were deceptive and misleading and otherwise in violation of the code.

41. Defendants' actions in misrepresenting the actual mileage were a violation of this code.

42. Defendants may have committed other violations of the Consumer Protection Act, pursuant to the facts set forth above.

43. Defendants knew or should have known at the time that they were deceiving Plaintiff and/or treating him unfairly in violation of the code.

44. As a direct result of Defendants' violations, Plaintiff suffered damages, including damage to his credit.

WHEREFORE, Plaintiff claims $25,000 in compensatory damages, $25,000 in punitive damages, and costs, interest, and attorney's fees as allowed by law, and requests that this Court declare the contract obligation void and unenforceable.

## COUNT II - NEGLIGENCE

45. Plaintiff incorporates all prior paragraphs.

46. Defendants acted negligently by failing to stop delivery, failing to set forth the proper contract terms, failing to make sure the proper stickers were affixed to the vehicle, forcing the financing and stating the wrong mileage.

47. Defendants may have been otherwise negligent.

WHEREFORE, Plaintiff claims $25,000 in compensatory damages, plus costs, fees, and interest as allowed by law, and requests that this Court declare the contract obligation void and unenforceable.

## COUNT III – FRAUD

48. Plaintiff incorporates all prior paragraphs.

49. Defendants told Plaintiff that he was bound by the contract despite the fact that delivery had not occurred.

50. Defendants delivered the vehicle to Plaintiff's mother's home, without consent or permission, in an attempt to force the sale upon Plaintiff and bind him to a contract to which he should not have been bound.

51. Defendants intended to create a false impression upon Plaintiff and intended that he rely on same.

52. Defendants' actions gave the false impression that Plaintiff was bound by the contract, to the severe detriment of his credit.

WHEREFORE, Plaintiff claims $25,000 in compensatory damages, $25,000 in punitive damages, and costs, interest, and attorney's fees as allowed by law, and requests that this Court declare the contract obligation void and unenforceable.

## COUNT IV – CANCELLATION OF CONTRACT

53. Plaintiff incorporates all prior paragraphs.

54. Plaintiff rightfully and effectively rejected the vehicle, as set forth above.

55. Alternatively, Plaintiff rightfully and effectively revoked any acceptance of the vehicle, as set forth above.

56. Defendants have refused, and continue to refuse to comply with Plaintiff's rejection or, alternatively, his revocation of acceptance of the vehicle.

57. As a direct result of this refusal, Plaintiff has suffered damages.

WHEREFORE, Plaintiff claims $25,000 in compensatory damages, $25,000 in punitive damages, and costs, interest, and attorney's fees as allowed by law, and requests that this Court declare the contract obligation void and unenforceable.

Jane Santoni
Williams, Bauer & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
410-938-8666

## REQUEST FOR JURY TRIAL

Plaintiff requests that the above captioned action be tried before a jury.

*[signature]*

Jane Santoni
Williams, Bauer & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
410-938-8666

Circuit Court for __Baltimore County__
                                                       City or County

## CIVIL–NON-DOMESTIC CASE INFORMATION REPORT

*Directions:*
    *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served.*
    *Defendant: You must file an Information Report as required by Rule 2-323(h).*
    __THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.__

FORM FILED BY: ☒ PLAINTIFF ☐ DEFENDANT      CASE NUMBER: _____

CASE NAME: Robert Bradley Byrne    v.   Towson Ford Sales Inc. et al
                    Plaintiff                                        Defendant

JURY DEMAND: ☒ Yes ☐ No    Anticipated length of trial: _____ hours or _____ days
RELATED CASE PENDING? ☒ Yes ☐ No   If yes, Case #(s), if known: 03CH00729407-2003

Special Requirements? ☐    Interpreter/communication impairment    Which language _____
(Attach Form 1-332 if Accommodation or Interpreter Needed)    Which dialect _____
                ☐    ADA accommodation: _____

### NATURE OF ACTION (CHECK ONE BOX)        DAMAGES/RELIEF

| TORTS | LABOR | A. TORTS | |
|---|---|---|---|
| ☐ Motor Tort | ☐ Workers' Comp. | Actual Damages | |
| ☐ Premises Liability | ☐ Wrongful Discharge | ☐ Under $7,500 | ☐ Medical Bills |
| ☒ Assault & Battery | ☐ EEO | ☒ $7,500 - $50,000 | $ _____ |
| ☐ Product Liability | ☐ Other _____ | ☐ $50,000 - $100,000 | ☐ Property Damages |
| ☐ Professional Malpractice | **CONTRACTS** | ☐ Over $100,000 | $ _____ |
| ☒ Wrongful Death | ☐ Insurance | | ☐ Wage Loss |
| ☒ Business & Commercial | ☐ Confessed Judgment | | $ _____ |
| ☒ Libel & Slander | ☒ Other Consumer | | |
| ☐ False Arrest/Imprisonment | **REAL PROPERTY** | | |
| ☐ Nuisance | ☐ Judicial Sale | B. CONTRACTS | C. NONMONETARY |
| ☐ Toxic Torts | ☐ Condemnation | | |
| ☒ Fraud | ☐ Landlord Tenant | ☐ Under $10,000 | ☐ Declaratory Judgment |
| ☒ Malicious Prosecution | ☐ Other _____ | ☐ $10,000 - $20,000 | ☐ Injunction |
| ☐ Lead Paint | **OTHER** | ☒ Over $20,000 | ☐ Other _____ |
| ☐ Asbestos | ☐ Civil Rights | | |
| ☒ Other | ☐ Environmental | | |
| __Consumer Violation__ | ☐ ADA | | |
| | ☒ Other __Consumer__ | | |

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
    A. Mediation    ☒ Yes ☐ No      C. Settlement Conference   ☒ Yes ☐ No
    B. Arbitration    ☐ Yes ☒ No      D. Neutral Evaluation      ☒ Yes ☐ No

### TRACK REQUEST

With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.
    ☐ ½ day of trial or less          ☐ 3 days of trial time
    ☐ 1 day of trial time            ☐ More than 3 days of trial time
    ☒ 2 days of trial time

PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY.

Date __8/19/03__      Signature _____

Effective January 1, 2003               Page 1 of 2

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-205 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**
Trial within 7 months of Defendant's response

☐ **Standard**
Trial - 18 months of Defendant's response

☐ EMERGENCY RELIEF REQUESTED ___

_____  _____
Signature                   Date

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (check only one)

☐ **Expedited** — Trial 60 to 120 days from notice. Non-jury matters.

☒ **Standard-Short** — Trial seven months from Defendant's response. Includes torts with actual damages up to $7,500; contract claims up to $20,000; condemnations; injunctions and declaratory judgments.

☐ **Standard-Medium** — Trial 12 months from Defendant's response. Includes torts with actual damages over $7,500 and under $50,000, and contract claims over $20,000.

☒ **Standard-Complex** — Trial 18 months from Defendant's response. Includes complex cases requiring prolonged discovery with actual damages in excess of $50,000.

☐ **Lead Paint** — Fill in: Birthdate of youngest plaintiff _____

☐ **Asbestos** — Events and deadlines set by individual judge.

☐ **Protracted Cases** — Complex cases designated by the Administrative Judge.

### CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

To assist the Court in determining the appropriate Track for this case, check one of the boxes below. This information is *not* an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.
☐ Liability is not conceded, but is not seriously in dispute.
☒ Liability is seriously in dispute.

### CIRCUIT COURT FOR BALTIMORE COUNTY

☐ **Expedited** (Trial Date-90 days) — Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus.

☒ **Standard** (Trial Date-240 days) — Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, Intentional Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases.

☐ **Extended Standard** (Trial Date-345 days) — Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency.

☐ **Complex** (Trial Date-450 days) — Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases.

Effective January 1, 2003                    Page 2 of 2